UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

PHILIP FUSCO,

                Plaintiff,

         v.

PORTOLA PHARMACEUTICALS, INC.,
JEFFREY W. BIRD, JOHN H. JOHNSON, H.
WARD WOLFF, DENNIS M. FENTON,
DAVID C. STUMP, TED W. LOVE, LAURA
A. BREGE, SCOTT GARLAND and
HOLLINGS C. RENTON,

------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Philip Fusco ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Portola Pharmaceuticals, Inc. ("Portola" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Portola will be acquired by Alexion Pharmaceuticals, Inc. ("Alexion"), through Alexion's wholly-owned subsidiary Odyssey Merger Sub Inc. ("Purchaser") (the "Proposed Transaction").

2.     On May 5, 2020, Portola entered into an Agreement and Plan of Merger with Alexion (the "Merger Agreement") pursuant to which Purchaser will be merged with and into Portola, with Portola surviving as a direct, wholly-owned subsidiary of Alexion.  Pursuant to the terms of the Merger Agreement, each stockholder of Portola common stock will be entitled to receive $18.00 in cash per share of Portola common stock.  The Tender Offer is scheduled to expire on July 1, 2020.

3.     On May 27, 2020, in order to convince Portola's public common stockholders to tender their shares, defendants authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.  The Recommendation Statement omits or misrepresents material information concerning, among other things: (i) Portola management's financial projections, relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview; and (iii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4.     It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until the material information discussed below is disclosed to Portola's stockholders.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Portola common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Portola.

9.      Defendant Portola is a Delaware corporation with its principal executive offices located at 270 E. Grand Avenue, South San Francisco, CA 94080.  Portola is a global, commercial-stage biopharmaceutical company focused on the discovery, development and commercialization of novel therapeutics that could significantly advance the fields of thrombosis and other hematologic conditions.  Portola's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "PTLA."

10.     Defendant Jeffrey W. Bird ("Bird") is, and has been at all relevant times, a director of the Company.

11.     Defendant John H. Johnson ("Johnson") is, and has been at all relevant times, a director of the Company.

12.     Defendant H. Ward Wolff ("Wolff") is, and has been at all relevant times, a director of the Company.

13.     Defendant Dennis M. Fenton ("Fenton") is, and has been at all relevant times, a director of the Company.

14.     Defendant David C. Stump ("Stump") is, and has been at all relevant times, a director of the Company.

15.     Defendant Ted W. Love ("Love") is, and has been at all relevant times, a director of the Company.

16.     Defendant Laura A. Brege ("Brege") is, and has been at all relevant times, a director of the Company.

17.     Defendant Scott Garland ("Garland") is, and has been at all relevant times, the Company's President, Chief Executive Officer ("CEO") and a director.

18.     Defendant Hollings C. Renton ("Renton") is, and has been at all relevant times, a director of the Company.

19.     Defendants identified in paragraphs 10 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Alexion is a global biopharmaceutical company headquartered in Boston, Massachusetts, focused on serving patients and families affected by rare and devastating diseases

through the discovery, development and commercialization of life-changing medicines.  As the global leader in complement biology and inhibition for more than 20 years, Alexion has developed and commercializes two approved complement inhibitors to treat patients with paroxysmal nocturnal hemoglobinuria and atypical hemolytic uremic syndrome, as well as the first and only approved complement inhibitor to treat anti-acetylcholine receptor antibody-positive generalized myasthenia gravis and neuromyelitis optica spectrum disorder.  Alexion's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ALXN."

21.     Purchaser is a Delaware corporation and wholly owned subsidiary of Alexion.

## SUBSTANTIVE ALLEGATIONS

## Company Background

22.     Founded in 2003, Portola is a biopharmaceutical company that develops and commercializes novel therapeutics in the areas of thrombosis, and other hematologic disorders and inflammation in Europe and the United States.  Its lead product is Andexxa, an antidote for the treatment of rivaroxaban and apixaban, which is marketed under the Ondexxya brand in Europe. The Company offers Bevyxxa (betrixaban), an oral, once-daily Factor Xa inhibitor for the prevention of venous thromboembolism in adult patients for an acute medical illness.  It also develops cerdulatinib, an investigational oral, dual spleen tyrosine kinase, and janus kinases inhibitor for the treatment of hematologic cancers; and Syk inhibitors.  Portola has collaboration agreements with Bristol-Myers Squibb; Pfizer Inc.; Daiichi Sankyo, Inc.; Bayer Pharma, AG; Takeda, Ora, Inc.; Astellas Pharma Inc.; and Janssen Pharmaceuticals, Inc.

23.     On February 26, 2020, the Company reported its fourth quarter and full year 2019 financial results.  Total global revenues were $29.2 million for the quarter, compared to $15.3 million for the fourth quarter of 2018 and $116.6 million for the year, compared to $40.1 million for the full year of 2018.  Commenting on the results, defendant Garland stated:

2019 was a year of significant accomplishments for Portola with the launch of our Gen 2 formulation of Andexxa in the United States and the approval and launch of Ondexxya in Europe.  In 2020 we have several catalysts that we expect to drive further adoption and growth worldwide. . . .  This includes the presentation of new clinical data, enhanced education and support related to reimbursement, the initiation of our urgent surgery study, and continued execution of the Ondexxya launch in Europe.  Combined with the robust growth in the Factor Xa inhibitor market and our other strategic initiatives, we are confident that Andexxa has significant long-term growth potential.

24.     On May 11, 2020, the Company reported its first quarter 2020 financial results.

Total global revenues for the first quarter of 2020 were $26.4 million compared with $22.2 million

for the same period in 2019.  Net loss attributable to Portola was $68.8 million, or $0.88 net loss

per share, compared with $78.2 million, or $1.17 net loss per share, for the first quarter of 2019.

Defendant Garland commented on the Company's results and outlook, stating:

2020 started strong with January representing our highest month of Andexxa demand in the U.S. since launch, driven in part by a return of growth in our tier one accounts. While encouraging, the emergence of the COVID-19 pandemic impacted our revenue in March and the quarter due to three main factors.  First, market research and customer feedback indicate that shelter-in-place restrictions issued by over 40 states have led to fewer patients coming into emergency departments. Second, most healthcare systems shifted their focus to preparing for and addressing COVID-19 patients, which impacted the number of new accounts added in the quarter.  Finally, on March 13, we suspended face-to-face field interactions with healthcare providers.  Despite these challenges, we continue to execute on our growth drivers and make progress with virtual meetings and education programs to highlight the value proposition of Andexxa, including recently presented clinical data.

**The Proposed Transaction**

25.     On May 5, 2020, Portola and Alexion issued a joint press release announcing the

Proposed Transaction which states, in relevant part:

BOSTON & SOUTH SAN FRANCISCO, Calif.-- Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc. (NASDAQ:PTLA) announced today that they have entered into a definitive merger agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical company focused on life-threatening blood-related disorders. Portola's commercialized medicine, Andexxa® [coagulation factor Xa (recombinant), inactivated-zhzo],

marketed as Ondexxya® in Europe, is the first and only approved Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and apixaban in severe and uncontrolled bleeding. The acquisition will add near-term diversification to Alexion's commercial portfolio and provides the opportunity to apply the company's demonstrated global commercial excellence to create long-term value for patients and shareholders. The merger agreement has been unanimously approved by the boards of Alexion and Portola.

"The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.

Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.

**The Recommendation Statement Omits Material Information**

27.     On May 27, 2020, defendants filed the materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Portola's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

28.     *First*, the Recommendation Statement omits material information regarding the Company's financial projections provided by Portola's management and relied upon by Centerview for its financial analyses.  Specifically, the Recommendation Statement fails to disclose the details of the risk adjustments that were incorporated into Company management's Initial Long-Term Plan and Updated Long-Term Plan as well as the variety of potential outcomes that were taken into account in creating the projections.  The Recommendation Statement also fails to disclose the un-risked projections so Portola stockholders can evaluate the financial impact the Company's risk adjustments had on the projections.

29.     The Recommendation Statement further fails to disclose a breakdown of the specific revenues and unlevered free cash flows ("UFCFs") from Andexxa and the Company's current pipeline of other drug candidates in the early stages of research and development for the indications currently being investigated by the Company.

30.     In addition, the Recommendation Statement fails to disclose: (i) the definition of how UFCFs were calculated; (ii) all line items underlying the calculation of UFCFs and EBIT; and (iii) the benefits of the Company's net operating losses ("NOLs") over the projection period.

31.     *Second*, the Recommendation Statement omits material information regarding Centerview's fairness opinion and analyses.

32.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 9.5% to 11.5%; (ii) the basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2032 at a rate of free cash flow decline between 30.0% to 20.0% year-over-year; (iii) the present value of the estimated costs associated with an assumed issuance of $100 million in equity securities in 2021; (iv) quantification of the impact of potential standalone tax savings from federal NOLs; (v) the fully diluted shares outstanding of Portola (using the treasury method and taking into account Portola RSUs, PSUs and In-The-Money Options and warrants) as of May 1, 2020; and (vi) why, following the public announcement of the Proposed Transaction, Centerview and Portola reviewed potential alternative ways of analyzing the value impact of Portola's obligations under certain royalty agreements to which Portola entered into for purposes of financing its operations.

33.     With respect to Centerview's analysis of stock price targets, the Recommendation Statement fails to disclose the individual price targets for the Company and the sources thereof.

34.     With respect to Centerview's analysis of premiums paid, the Recommendation Statement fails to disclose the individual premiums for each of the transactions observed by Centerview.

35.     *Finally*, the Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

36.     The Recommendation Statement fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Alexion and Portola executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Recommendation Statement further fails to disclose whether any of Alexion's proposals or indications of interest mentioned management retention, consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company.  In addition, the Recommendation Statement fails to disclose the details of the discussions and negotiations concerning certain members of Portola management's in-the-money options and restricted stock units which will roll over and be converted into Alexion options and restricted stock units in connection with the Proposed Transaction.

37.     In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Portola stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### Claims Against All Defendants for Violations
### of Section 14(d) of the Exchange Act and SEC Rule 14d-9

38.     Plaintiff repeats all previous allegations as if set forth in full.

39.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Portola stockholders to tender their shares in the Offer.

40.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

41.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

42.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

43.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Portola, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations
of Section 14(e) of the Exchange Act**

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

46.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

47.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek to exercise his appraisal rights.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Portola and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

52.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

53.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Portola, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in

concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 15, 2020

*s/William B. Federman*

**FEDERMAN & SHERWOOD**
William B. Federman (WF9124)
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
-and-
212 W. Spring Valley Road
Richardson, Texas 75081

*Attorneys for Plaintiff*